only from a deprivation by state action." J.A. at 16 (Dist. Ct. Op. at 7) (quotation omitted).

We note, however, that in *Hafer v. Melo*, 502 U.S. 21, 27 (1991), the Supreme Court rejected the argument that state officers could not be held personally liable for actions taken within the scope of their official duties. According to the Court, such a rule would be in conflict with prior decisions indicating "that Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, *whether they act in accordance with their authority or misuse it.*" *Id.* at 28 (quotation omitted) (emphasis added). Thus, the fact that Mayor Berger acted in his official capacity as mayor does not immunize him from being sued as an individual under § 1983. The district court's second reason for rejecting the individual capacity suit — that the Fourteenth Amendment protects only against actions of the state — also conflicts with *Hafer*. The state action requirement of the Fourteenth Amendment is satisfied by showing that a state official acted "under color of" state law, as when the official exercises authority conferred by a state office. *Id.* at 27-28. The state action requirement does not limit civil rights plaintiffs to suits against only government entities. The district court's interpretation of "state action" would eliminate all § 1983 suits against individual state officers. Prevailing law dictates a broader interpretation of the state action requirement. As noted above, however, we affirm on other grounds the dismissal of the claims against the Mayor.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0229P (6th Cir.)
File Name:  02a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MED CORP., INC.,
            *Plaintiff-Appellant,*

            v.                                             No. 00-4112

CITY OF LIMA and DAVID J. BERGER, both individually and in his capacity as Mayor of the City of Lima, Ohio,
            *Defendants-Appellees.*

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 99-07723—James G. Carr, District Judge.

Argued:  March 5, 2002

Decided and Filed:  July 12, 2002

Before:  MOORE and COLE, Circuit Judges; TARNOW, District Judge.

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

## COUNSEL

———————————

**ARGUED:**   Steven B. Winters, CLINE, COOK & WEISENBURGER, Toledo, Ohio, for Appellant. Anthony L. Geiger, Lima, Ohio, for Appellees. **ON BRIEF:** James P. Silk, Jr., SPENGLER NATHANSON P.L.L., Toledo, Ohio, for Appellant. Anthony L. Geiger, Lima, Ohio, for Appellees.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge.   Plaintiff-Appellant Med Corp. appeals the district court's order granting summary judgment in favor of Defendants-Appellees, the City of Lima and David J. Berger, both individually and in his official capacity as Mayor of the City of Lima, Ohio (collectively, the "City"). Med Corp., an ambulance company, challenges the City's proposed one-week suspension of Med Corp. from receiving 911 emergency dispatches from the City. The City's decision to suspend Med Corp. was based upon alleged incidents involving Med Corp.'s slow response times and inability to locate addresses within the City. Med Corp. alleges that the suspension constitutes a deprivation of property and liberty without due process of law in violation of the Fourteenth Amendment. Upon the City's motion for summary judgment, the district court concluded that (1) Med Corp. did not possess a property interest in receiving 911 calls, and (2) no liberty interest was implicated because Med Corp. had not shown a loss of business opportunities or damage to reputation. For the reasons that follow, we **AFFIRM** the decision of the district court.

## I. FACTS AND PROCEDURE

Med Corp. provides ambulance services in Northwest Ohio. In January of 1999, Med. Corp. applied for and received a

reputation of a business were to be construed as a 'deprivation' of goodwill . . . ."). We decline to endorse such a result.

Med Corp. has not made the showing required by Supreme Court and Sixth Circuit precedent to state a claim for deprivation of a liberty interest based upon injury to reputation. In particular, Med Corp. has not shown that the City disclosed its allegations publicly, which we think is essential to any claim alleging injury to business reputation, whether couched in terms of a goodwill/property interest or a livelihood/liberty interest. *See Wimer*, 868 F. Supp. at 849 ("Assuming *arguendo* that Plaintiff is able to demonstrate that loss of goodwill is a property interest within the meaning of the Due Process Clause, he must still offer this Court at least some evidence that the actions of the state served to stigmatize him or his business."). Nor has Med Corp. shown that its future business opportunities would be foreclosed by the proposed suspension. We therefore conclude that summary judgment was appropriate as to Med Corp.'s due process claims alleging injury to its business goodwill.

## C.  Claims Against the Mayor

Having concluded that Med Corp. has failed to show a deprivation of any constitutionally protected liberty or property interest, we must dismiss the plaintiff's claims as to all defendants, since Med Corp.'s claims against the Mayor are identical to its claims against the City. We therefore affirm the judgment of the district court as to all parties. We note, however, that we dismiss Med Corp.'s claims against the Mayor on different grounds than those asserted by the district court. The district court concluded that these claims should be dismissed regardless of whether a protected property or liberty interest had been shown. The district court reasoned that an individual capacity suit could not be maintained against the Mayor "because 1) the Mayor never acted in his individual capacity, and 2) the Fourteenth Amendment does not apply to individual actions" because "[t]he Fourteenth Amendment protects property interest[s]

asserted liberty interest arising from injury to its reputation. The property deprivation of which Med Corp. complains is merely the reduction in the value of its goodwill resulting from an alleged injury to its business reputation. We have already explained that Med Corp. cannot maintain a liberty interest claim under the legal standards applicable to due process claims based upon defamatory injuries to reputation. "The question then becomes whether damage to reputation is to be treated differently because the damage affects the person's business." *WMX Techs*., 197 F.3d at 374. We think that it should not. Just as injuries to the reputation of an individual, without more, do not establish a deprivation of a constitutionally protected liberty or property right, *Siegert*, 500 U.S. at 234, "damage to the reputation of a business, without more, does not rise to the level of a constitutionally protected property interest." *WMX Techs*., 197 F.3d at 376. We therefore agree with those courts that have concluded that "property" claims based upon alleged deprivations of business goodwill resulting from defamatory statements should be judged according to the standards applicable to liberty interest claims based upon injuries to reputation. *See, e.g.*, *id.* at 376; *Am. Family Life Ins. Co.*, 733 F.2d 559, 565 (8th Cir. 1984); *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999) ("It is well established, however, that the interest on which plaintiffs here primarily rely — 'business reputation' — falls outside the protection of the due process clause." (citation omitted)); *Wimer v. H.R. Holzapfel*, 868 F. Supp. 844, 849 (E.D. Tex. 1994). An injury to a business's reputation could always be presented as a claim for lost goodwill, since the latter is partly a function of reputation and public prejudices. *See Spayd,* 482 N.E.2d at 1236. If we were to recognize injuries to business reputation as a distinct kind of property deprivation, businesses could effectively circumvent the carefully designed doctrines developed to limit due process claims arising from mere defamation. *See WMX Techs., Inc.*, 197 F.3d at 375 ("[T]he Supreme Court . . . . stressed, in the context of *Paul v. Davis*, the extent to which federal law could subsume state tort law if § 1983 were to be construed to allow damage to personal reputation without more to be brought as a federal action. The same is true if damage to the

license to provide ambulance services in the City of Lima. Under § 840.02(a) of the Lima Municipal Code, an ambulance license is required to engage in the "business or service of the transportation of patients upon the streets, alleys or other public ways or places of the City." Appellant's Br., Ex. A. Chapter 840 of the Municipal Code sets forth the procedures and requirements for obtaining a license to operate an ambulance service in the City. To obtain and maintain a license, ambulance operators must, among other things, demonstrate that they can respond to emergency calls within a specified time frame. LIMA MUN. CODE § 840.04(a)(7), Appellant's Br., Ex. A. Ambulance operators must also demonstrate their capacity to "respond to more than one emergency call simultaneously." LIMA MUN. CODE § 840.04(b), Appellant's Br., Ex. A.

The Lima Municipal Code also provides procedures for the revocation or suspension of an ambulance operator's license. Section 840.12 of the Code states in relevant part:

(a) The License Officer may suspend or revoke a license required by this chapter for failure of a licensee to comply and to maintain compliance with, or for violation of, this chapter, . . . but only after warning and such reasonable time for compliance as may be set by the License Officer. Within thirty days after a suspension, the licensee shall be afforded a hearing before the License Officer . . . .

. . . .

(c) Upon suspension, revocation or termination of an ambulance license, such ambulance shall cease operations as such, and no person shall permit such ambulance to continue operations as such.

Appellant's Br., Ex. A.

In Lima, emergency 911 calls received from City residents are dispatched to ambulance companies on a rotational basis. City residents dialing "911" to receive emergency services are routed directly to a dispatch system located in the City police

department. Depending upon the type of call received, the calls are then dispatched to either the City paramedic service or private ambulance companies licensed to operate in the City. Med Corp. contends that in January of 1999, Mayor Berger informed Med Corp. that the City would dispatch every other 911 call received by the City's emergency dispatch service to Med Corp. According to Med Corp., it has responded to over 1300 calls received from the City dispatcher since this time. All parties agree that at all times relevant to this appeal, the City did not have any written policy, procedure, or legislative enactment governing the manner in which the City allocated its 911 calls to private ambulance companies.

On November 17, 1999, Mayor Berger sent a letter to Med Corp. informing the company of his decision to suspend the dispatch of 911 calls to Med Corp. for a period of one week. The letter explained that the decision was based upon the results of the City Fire Chief's investigation of events occurring in October 1999 and upon investigations of similar incidents that occurred earlier. The Fire Chief's investigation report was enclosed with the letter. The report discussed several complaints against Med Corp., most of which involved Med Corp. ambulance drivers who were unable to locate addresses within the City.

Upon receiving Mayor Berger's letter, Med Corp. filed suit in the Northern District of Ohio, seeking to enjoin the City from carrying out the proposed suspension. Med Corp. asserted that the proposed suspension amounted to a deprivation of property and liberty without due process of law in violation of the Fourteenth Amendment. On November 24, 1999, the district court granted a temporary restraining order enjoining the suspension. The parties apparently then agreed that the suspension would not be implemented until the instant suit was resolved. On May 15, 2000, the City and Mayor moved for summary judgment.

In an order filed on August 14, 2000, the district court granted summary judgment in favor of the defendants. The

claims that the proposed suspension would deprive it of its reputation for skill in the ambulance service industry, and therefore constitutes a deprivation of its property interest in its goodwill. Because we find this claim to be indistinguishable from Med Corp.'s liberty interest claim based upon alleged injuries to its reputation, which we have already determined to be without merit, we likewise reject Med Corp.'s claim that it was deprived of its property interest in its business goodwill.

Under Ohio law, "goodwill" is comprehensively defined as

the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*Spayd v. Turner, Granzow & Hollenkamp*, 482 N.E.2d 1232, 1236 (Ohio 1985) (quoting STORY, COMMENTARIES ON THE LAW OF PARTNERSHIP § 99, p.170 (6th Ed. 1868)). The concept of goodwill generally refers to the value of a business as a going concern and is "measured by the value of the business over and above the value of its physical property." 38 AM. JUR. 2D GOOD WILL § 4 (1999); *see also WMX Techs., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999) (en banc) ("Essentially, the goodwill of a business is its value as a going concern and is made up of many factors, such as location, patronage of customers, relations with suppliers, experience of employees, effectiveness of management, and many other factors."). Although a business's reputation with the general public affects the value of its goodwill, "[r]eputation is not the equivalent of the goodwill of a business." *Id.*

Med Corp.'s property claim based upon injury to goodwill fails for the same reasons discussed in relation to Med Corp.'s

Furthermore, Med Corp. has failed to present any evidence, beyond the mere assertions contained in its briefs, to show that the City disclosed its complaints about Med Corp.'s services to the public. Such a showing is an essential element of any Fourteenth Amendment liberty claim based upon injury to reputation. *Ludwig*, 123 F.3d at 410; *see also Bishop*, 426 U.S. at 348. Med Corp.'s verified complaint does not allege that the City disclosed its decision, or the reasons underlying its decision, to any third party. Nor has Med Corp. pointed to any other evidence in the record suggesting that the City's allegations have been or will be publicly disclosed.[2]

Finally, Med Corp. does not contend that the charges against it are false. Although Med Corp. maintains that it responded within the acceptable time limits in each incident cited by the City, it does not dispute the events described in the Fire Chief's report suggesting that Med Corp. employees were unfamiliar with the City and unable to locate particular addresses on a number of occasions.

In sum, Med Corp. has failed to allege facts to support several essential elements of a due process claim based upon injury to its reputation. We therefore conclude that the district court properly awarded summary judgment to the City as to Med Corp.'s asserted liberty interest claim.

### 4. Property Interest in Goodwill

Med Corp. further asserts that the proposed suspension would deprive it of a protected property interest in its business goodwill. Med Corp. observes that Ohio law recognizes property rights in business goodwill. Med Corp.

---

[2]The fact that the City's allegations might be disclosed as a result of the instant legal proceedings is insufficient to satisfy the disclosure requirement. *See Bishop*, 426 U.S. at 348-49 ("[S]ince the . . . communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for is claim. A contrary evaluation . . . would penalize forthright and truthful communication . . . between litigants . . . .").

court concluded that Med Corp. had not shown any constitutional property interest in receiving 911 dispatches from the City, because there was no enforceable policy or procedure restraining the City's discretion to suspend the dispatches. The court also rejected Med Corp.'s asserted liberty interest in its good name and reputation, because there was no evidence that either the City's intention to suspend Med Corp. or its reasons for the suspension were disclosed to the public. Finally, the district court dismissed all claims against Mayor Berger. The court observed that the Fourteenth Amendment protects against only state action, so Mayor Berger could not be sued in his individual capacity. The court further observed that a suit against Mayor Berger in his official capacity should be treated as a claim against the underlying entity, in this case the City of Lima, and determined that the suit against Mayor Berger in his official capacity should also be dismissed. Med Corp. filed a timely notice of appeal.

## II. ANALYSIS

### A. Standard of Review

We review the district court's decision granting summary judgment de novo. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097 (6th Cir. 1994). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). This court must look beyond the pleadings and assess the proof to determine whether there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In conducting the summary judgment analysis, this court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *See Gen. Elec. Co.*, 29 F.3d at 1097-98.

## B. Alleged Deprivations of Med Corp.'s Property and Liberty Interests

In order to establish a procedural due process claim in a § 1983 action, "plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000). The district court awarded summary judgment to the defendants on the basis of its conclusion that Med Corp. had failed to show a protected interest sufficient to satisfy the first element. On appeal, Med Corp. challenges the decision of the district court that it had asserted no constitutionally protected liberty or property interest. Med Corp. asserts, in essence, four different interests. First, Med Corp. asserts that it does possess a protected property interest in receiving 911 dispatches from the City. Second, Med Corp. claims that the suspension constitutes a deprivation of its property interest in its license to operate an ambulance in Lima. Third, Med Corp. asserts that the proposed suspension would damage its business reputation and result in the deprivation of its liberty interest in its ability to pursue a profession. Fourth, Med Corp. contends that the suspension would result in a deprivation of its property interest in its business goodwill.

### 1. Property Interest in Receiving 911 Calls

Med Corp. contends that it does possess a protected property interest in receiving 911 calls from the City dispatch center. In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the

(quoting *Roth*, 408 U.S. at 573). Third, "the stigmatizing statements or charges must be made public." *Id*; *see also Bishop v. Wood*, 426 U.S. 341, 348 (1976). "Fourth, the plaintiff must claim that the charges made against him were false." *Ludwig*, 123 F.3d at 410. And "[l]astly, the public dissemination must have been voluntary." *Id.*

Even if we assume that Med Corp. has made the necessary threshold showing that its injury to reputation occurred in connection with the loss of a governmental right or benefit, *Mertik*, 983 F.2d at 1363, the City would still be entitled to summary judgment. First, Med Corp. has failed to demonstrate a genuine issue of material fact as to whether the alleged injury to its reputation would foreclose its ability to seek future business opportunities in the ambulance service industry. "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Ludwig*, 123 F.3d at 410 (quotation omitted); *see also Wedges/Ledges*, 24 F.3d at 65 (finding no liberty interest because City's decision to ban temporarily one type of amusement game operated by the plaintiff did not foreclose pursuing livelihood in the amusement game industry). Med Corp. has not shown that it will lose any business opportunities other than the opportunity to respond to 911 calls during the suspension. "The mere denial of a business or employment opportunity, without more, does not deprive a person of a liberty interest, for the ability to obtain future business or employment opportunities is not jeopardized." *Bannum, Inc. v. Town of Ashland*, 922 F.2d 197, 201 (4th Cir. 1990) (holding operator of a halfway house did not show deprivation of liberty interest where town withdrew approval for particular location). There is no evidence in the record to suggest that Med Corp.'s other clients will cease using its services as a result of the stigma from the proposed suspension. Moreover, the record indicates that the City itself will resume use of Med Corp.'s services after the one-week suspension.

the proposed 911-call suspension would constitute an effective suspension or revocation of its license.

### 3. Liberty Interest/Reputation

Med Corp. next alleges that the proposed suspension would deprive it of its liberty interest in pursuing its chosen occupation. Med Corp. claims that the suspension would damage its business reputation and impair its ability to obtain business in the future. The district court rejected this claim on the grounds that Med Corp. had not shown that either the City's decision or its reasons were disclosed to any third parties, or that the suspension would impair future business opportunities.

The Supreme Court has suggested that a protected liberty interest may be implicated by certain injuries to a person's reputation or good name which threaten to restrain the individual's freedom to pursue business or employment opportunities. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). The situations in which such injuries to reputation will give rise to a Fourteenth Amendment claim are limited, however. The Fourteenth Amendment does not transform all tort-law defamation claims against the state into constitutional violations. *See Paul v. Davis*, 424 U.S. 693, 712 (1976).

We have held that an injury to one's reputation, good name, honor, or integrity constitutes a deprivation of a liberty interest only when five elements are satisfied. *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997) (reviewing Supreme Court and Sixth Circuit precedent). First, the allegedly stigmatizing statements must be made in connection with "the loss of a governmental right, benefit, or entitlement." *Mertik v. Blalock*, 983 F.2d 1353, 1363 (6th Cir. 1993); *see also Paul*, 424 U.S. at 711. There is no constitutional liberty interest in one's reputation standing alone. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Second, a plaintiff alleging an injury to a liberty interest must show that the defendant made defamatory statements "that [would] foreclose[] his freedom to take advantage of other employment opportunities." *Ludwig*, 123 F.3d at 410

Supreme Court elaborated upon the kinds of interests protected by the Fourteenth Amendment. The Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. The Court further explained that property interests are not created by the Constitution itself, but rather by "existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Applying this principle, the *Roth* Court found that an untenured professor, whose appointment was for only one year, did not possess a protected property interest in his continued employment after the term of his appointment expired. *Id.* at 578.

Based upon *Roth*, and the cases that have followed it, the district court correctly determined that Med Corp. did not possess a protected property interest in receiving 911 dispatches from the City. We have previously recognized that a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary. *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *see also Wedges/Ledges of Calif., Inc. v. City of Phoenix*, 24 F.3d 56, 62-63 (9th Cir. 1994) (explaining that existence of a reasonable expectation of entitlement is determined by whether language of the statute conferring the benefit is framed in mandatory terms and whether statute imposes substantive constraints on official discretion to award the benefit). If an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a "unilateral expectation" to it. *Roth*, 408 U.S. at 577. Applying this principle, we have held that no protected property interest is implicated when, under circumstances similar to those presented by the instant case, towing companies are removed from a local government's rotational dispatch list. *Lucas v. Monroe County*, 203 F.3d 964, 978 (6th Cir. 2000); *see also, e.g, Morley's Auto Body,*

*Inc. v. Hunter*, 70 F.3d 1209, 1214 (11th Cir. 1995) (holding that no property interest was created where policy of rotating calls to wrecker companies was "issued in the sole discretion of the . . . Sheriff," and concluding after a survey of similar cases from other circuits that this reflected unanimous position of the circuits). In *Lucas*, 203 F.3d at 978, we affirmed the dismissal of several wrecker companies' due process claims, which alleged that the county sheriff had improperly removed the companies from the county's rotational dispatch list after owners voiced complaints charging that the sheriff was administering the list in a corrupt manner. We based this decision on the fact that the "Plaintiffs c[ould] point to no ordinance, contract or other 'rules of mutually explicit understandings' that support[ed] their claim of entitlement to remain on the stand-by list." *Id.* (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). Although there were written policies governing eligibility for inclusion on the dispatch list, we found that these policies did not create a property interest because "[t]he written policies . . . — however unfair they may be — explicitly provide[d] that a wrecker company may be immediately removed from the list upon making a complaint to an unauthorized person." *Id.* In other words, the policies provided unconstrained discretion to remove a company upon the occurrence of a particular event.

Therefore, in order to assert a property interest in receiving 911 calls, Med Corp. must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit. Med Corp. has not made the required showing. It is undisputed that no written policy or legislative enactment establishes a procedure for maintenance of the 911 dispatch list or limits the discretion of City officials to remove ambulance companies from the list. In this sense, Med Corp.'s claim is even weaker than the one we rejected in *Lucas*, in which a written policy for maintaining the dispatch list did exist but did not provide for substantive limits on the sheriff's discretion to remove wrecker companies.

Assuming that Med Corp. could assert a due process claim based upon the indirect loss in the value of its ambulance license that would result from the proposed suspension, summary judgment for the City would nonetheless be appropriate. Med Corp. has not alleged facts sufficient to show that the proposed suspension would *completely* destroy the value of its license. Although ordinarily "the extent of the injury [to the asserted property interest] is irrelevant except for determining what process is due," courts have typically recognized indirect injuries to the value of property as constitutional "deprivations" only "when such indirect injuries *effectively render the property valueless*." *Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977) (emphasis added) (rejecting claim that approval of a certification for competitor of plaintiff destroyed value of plaintiff's license without due process); *see also Indus. Safety Equip. Ass'n v. Envtl. Prot. Agency*, 837 F.2d 1115, 1122 (D.C. Cir. 1988); *Pirolo v. City of Clearwater*, 711 F.2d 1006, 1013 (11th Cir. 1983) ("[U]nlike the case in *Reed*, we cannot say that this action on the part of the city, even if done in bad faith as alleged, had the effect of destroying the value of Pirolo's business."). The evidence in the record is not sufficient to support a finding that the loss of 911 dispatches would render Med Corp.'s license valueless, even during the limited term of the proposed suspension. In his affidavit, Mayor Berger stated:

> Had the suspension . . . gone into effect, Med Corp. would have had the right to respond to emergency calls made directly to its private telephone number, and it could still have provided ambulance services to other customers it may have under contract such as nursing homes, elderly care facilities, hospitals, or funeral homes.

J.A. at 29 (Berger Aff.). Med Corp. offers no evidence to dispute this claim. The record contains no evidence to show that 911 dispatches constitute all, or even the majority of, Med Corp.'s business. Absent such a showing, Med Corp. has not shown a genuine issue of material fact as to whether

plaintiff's certification to work as a peace officer); *see also Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330, 336 (8th Cir. 1986), *cert. denied*, 480 U.S. 918 (1987); *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983). In *Reed*, for example, the proprietors of a music venue that served alcohol claimed that village officials deprived them of their property rights in their liquor license by engaging in a pattern of official harassment, which included "arresting customers and employees on baseless charges, demanding proof of age from customers who obviously were many years over the legal drinking age, and bringing groundless proceedings," and which ultimately forced the plaintiffs to close their establishment and surrender their liquor license.  704 F.2d at 947.  The Seventh Circuit concluded that, although "[t]he defendants never succeeded in taking away the plaintiffs' license either by revocation or nonrenewal," village officials may still have "deprived" the plaintiffs of their property interests in the liquor license.  *Id.* at 949.  The court explained:

> "[D]eprive" in the due process clause cannot just mean "destroy."  If the state prevents you from entering your house it deprives you of your property right even if the fee simple remains securely yours.  A property right is not bare title, but the right of exclusive use and enjoyment.

*Id.*  The court drew this conclusion, in part, from related doctrines concerning Fifth Amendment takings, where it is recognized that "[i]f government makes your house uninhabitable, that is a taking of your property even if you retain clear title." *Id.*  Med Corp. urges this court to follow the reasoning of these cases and hold that, by denying Med Corp. the right to receive 911 calls from the City for one week, the proposed suspension would effectively deprive Med Corp. of the use and enjoyment of its property interest in its license without the procedural protections normally attendant to a suspension of a license under the Lima Municipal Code. We find Med Corp.'s argument unpersuasive.

Med Corp. asserts that the provisions in the Lima Municipal Code governing eligibility for, and issuance and revocation of, ambulance licenses establish a property interest in receiving 911 dispatches.  Nothing in the Code, however, even mentions 911 calls or the allocation of 911 dispatches by the City.  According to the Code, receipt of a license entitles the recipient to engage in the "business or service of the transportation of patients upon the streets, alleys or other public ways or places of the City."  LIMA MUN. CODE § 840.02(a), Appellant's Br., Ex. A.  By its own terms, the Code guarantees only the right to do business, not the right to receive particular business opportunities from the City.  Med Corp. notes that the Code pertains to emergency 911 calls, insofar as it requires that licensees possess a certain capacity to respond to emergency calls.  According to *Roth* and its progeny, however, it is not enough that the Code refer to emergency calls; instead, it must contain "mutually explicit" understandings that establish an "entitlement" to receive the benefit.  There is no explicit guarantee in the Code that an ambulance licensee will receive 911 dispatches from the City, so the Code cannot form the basis for a property right in the continued receipt of 911 dispatches.

Med Corp. also asserts that a property interest in receiving 911 dispatches was created by the official, albeit unwritten, mayoral policy of alternating 911 dispatches among licensed ambulance operators.  The Supreme Court has recognized that property interests may be created in some situations despite the absence of explicit contractual or legal provisions establishing a claim of entitlement.  *Perry*, 408 U.S. at 601-02. For example, under traditional principles of contract law, "[e]xplicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in the light of the surrounding circumstances." *Id.* at 602 (quotation omitted).  Therefore, Med Corp. could establish a protected property interest if it could show that the Mayor or the City engaged in words or conduct that created an implicit, but nonetheless legally binding, obligation to continue to include Med Corp. in the City's allocation of 911 dispatches.  On the record, however, Med Corp. has not

adduced such facts.  There is no evidence in the record, for example, that would support a claim that an implied contract was created or that would define what the terms of such a contract might have been.[1]  Med Corp.'s verified complaint alleges only that Mayor Berger "instituted a policy in which Plaintiff received every other 911 call."  Joint Appendix ("J.A.") at 5.  Under prevailing law, however, the existence of a policy — written or otherwise — is not enough to create a property interest.  *See Lucas*, 203 F.3d at 978; *Morley's*, 70 F.3d at 1214.  The terms of that policy must constrain the discretion of the official to suspend the benefit.  No evidence on the record suggests the existence of any such terms.

### 2. Effective Revocation

Med Corp. also argues that by depriving it of the opportunity to receive 911 dispatches from the City for one week, the City's proposed suspension would effectively deprive Med Corp. of its property interest in its ambulance license by rendering the license valueless during the term of the suspension.  Med Corp. contends that the suspension is merely an attempt by the City to suspend Med Corp.'s ambulance license without affording Med Corp. the procedural protections required for suspensions of licenses under the Lima Municipal Code.  *See* LIMA MUN. CODE § 840.12, Appellant's Br., Ex. A.

The property interest asserted in this instance is Med Corp.'s interest in its *license*, not its right to receive 911 dispatches.  Med Corp. does possess a protected property

---

[1]Moreover, Med Corp.'s assertion that ambulance service providers rely upon the Mayor's policy when projecting whether an ambulance company will succeed is insufficient to demonstrate a property interest. In the absence of some enforceable legal entitlement to continued participation in the City's 911 dispatch rotation, "mere reliance" is insufficient to establish a property interest. *Bannum, Inc. v. Town of Ashland*, 922 F.2d 197, 200 (4th Cir. 1990) ("[N]othing in the record suggests that Ashland could not have unilaterally withdrawn the approval at any time.  Certainly, mere reliance on the approval did not elevate Bannum's interest in it to an entitlement.").

interest in its license to operate ambulances.  *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149-50 (10th Cir. 2001) ("The Supreme Court has held that a license to practice one's calling or profession is a protected property right.").  The Lima Municipal Code authorizes revocation or suspension of ambulance licenses as a penalty for an ambulance company's failure to comply with the provisions of the Code.  Moreover, under the Code, revocation or suspension can occur only after the company receives a warning and reasonable time for compliance.  LIMA MUN. CODE § 840.12(a), Appellant's Br., Ex. A.  Thus, the Lima Municipal Code imposes explicit substantive constraints on the discretion of Lima officials to revoke or suspend licenses, thereby creating a legitimate claim of entitlement to the continued enjoyment of ambulance licenses.  *See Barry v. Barchi*, 443 U.S. 55, 64 (1979) ("It is conceded that, under New York law, Barchi's license could have been suspended only upon a satisfactory showing that his horse had been drugged and that he was at least negligent in failing to prevent the drugging.  As a threshold matter, therefore, it is clear that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause.").

The question, however, is whether Med Corp. will be "deprived" of its property interest in its license for the purposes of the Fourteenth Amendment if the proposed suspension takes effect.  There is no allegation that Med Corp.'s license will be actually suspended or revoked during the period of suspension.  Med Corp. will be allowed to retain its license and conduct business; it simply will not receive 911 dispatches from the City.  Nevertheless, a number of courts of appeals have held that under certain circumstances, "[a]ctions taken by the State which destroy the value or utility of a protected property interest constitute a Fourteenth Amendment deprivation of that interest," even though the state does not formally deprive the owner of title to the property.  *Stidham*, 265 F.3d at 1153 (holding that state official's ultra vires action in disseminating damaging information about the plaintiff that prevented him from obtaining employment constituted effective revocation of