**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0062n.06
Filed: January 23, 2006

No. 04-6008

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KEVIN GOLDEN,                              )
                                          )
    **Plaintiff-Appellant,**               )    **ON APPEAL** FROM THE
                                          )    UNITED STATES DISTRICT
v.                                        )    COURT FOR THE WESTERN
                                          )    DISTRICT OF TENNESSEE
TOWN OF COLLIERVILLE ET AL.,              )
                                          )    **O P I N I O N**
    **Defendants-Appellees.**              )
_____  )

Before: MOORE and SUTTON, Circuit Judges, and BUNNING,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Kevin Golden ("Golden")

appeals from the district court's grant of summary judgment to the defendants in a case raising

procedural due process and equal protection claims pursuant to 42 U.S.C. § 1983 as well as state

civil-conspiracy and other claims.[1] Golden, who is white, claims that he was offered but then denied

a promotion to the position of fire lieutenant because of his race. William Boone ("Boone"), a

firefighter who is black, was promoted to the lieutenant position instead of appellant. The appellees

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]Golden initially also brought Title VII, substantive due process, defamation, and intentional infliction of emotional distress claims, but did not contest the defendants' motion for summary judgment on these claims.

argue that Boone was promoted because he ranked above Golden in the testing and interview process. We **AFFIRM** the district court's judgment in favor of defendants.

## I. BACKGROUND

The following facts are undisputed. In December 2000, the Town of Collierville approved the opening of an additional firehouse, which created three additional fire lieutenant positions to staff the station. Applicants meeting the requirements and submitting their applications by the deadline then submitted to a four-part test developed by a private testing company and also interviewed with appellee Richard Arwood ("Arwood"), who at the time was the Assistant Fire Chief. Golden, Boone, and eight other firefighters applied for the positions. Of these ten applicants, two including Boone were black, and eight including Golden were white. After the testing and interview process was complete, Boone was ranked third and Golden was ranked fourth. In an October 2001 memo, Arwood advised the lieutenant candidates of their scores relative to the other candidates.

In late November 2001, appellee Fire Chief Dennis Rutledge ("Rutledge") met with Golden and told him that even though he had finished fourth in the testing and interview process behind Boone, it was Rutledge's intention to recommend Golden for a promotion to lieutenant over Boone. Golden contends that in this conversation Rutledge unequivocally told him that Rutledge was promoting Golden to the third lieutenant position, effective the following month. Golden alleges that Rutledge told him that Rutledge did not think Boone was ready for promotion. Rutledge claims that at that time, due to the closeness of the scores of Boone and Golden, it was Rutledge's desire to promote Golden over Boone even though Golden was ranked fourth, because Rutledge believed that Golden had more experience "riding out of rank" as a lieutenant than did Boone.

2

Word of Rutledge's conversation with Golden spread within the fire department. Boone, who knew from Arwood's memo that he ranked third ahead of Golden, was upset by the rumors that Golden would be promoted over him, and so Boone filed a grievance with the town administrator, appellee James Lewellen ("Lewellen"). After listening to Boone's concerns, Lewellen contacted Rutledge and advised Rutledge that pursuant to Collierville Ordinance Section 12.07, when a grievance is filed, the results of the final promotion process "shall be deferred pending resolution of the grievance." Joint Appendix ("J.A") at 113 (Lewellen Aff. at ¶¶ 19-21). Rutledge told Lewellen that experience riding out of rank was the factor that led him to prefer Golden over Boone. Lewellen became concerned, because experience riding out of rank had not been listed as a factor to be considered in the May 2001 memo outlining the promotion process, and so Lewellen sought the advice of a town attorney, who advised him that it would not be appropriate to base a promotion on a factor that was not disclosed to the candidates. Lewellen advised Rutledge of the attorney's recommendation, and Rutledge then advised Lewellen that Rutledge would recommend the top three ranked lieutenant candidates, which included Boone but not Golden, for the promotion. Lewellen approved the promotion of those three firefighters on December 12, 2001, and by memo dated December 14, 2001, Rutledge advised all fire department personnel that the three would be promoted.

On December 17, 2001, Golden filed his own grievance with Lewellen to stop the promotion of Boone, alleging irregularities in the promotion process and claiming that Rutledge had already promoted Golden to the lieutenant position. Although Golden did not mention Boone by name, he

3

hinted that Boone was not qualified for the promotion.[2]  In that grievance, Golden did not allege that the decision to promote Boone was based on race.  Again abiding by the town's ordinance, Lewellen advised Rutledge to put the promotions on hold pending a resolution of Golden's grievance. Lewellen investigated Golden's grievance and met with several individuals in the fire department, including those suggested by Golden.  During this time, Lewellen and Rutledge also reexamined the fairness of the promotion process.  They discovered several irregularities in how the process had proceeded.  Lewellen discovered that although the May memo to potential applicants outlining the process stated that a deduction for disciplinary action within the past two years could be made, it did not allow for consideration of the nature or severity of any disciplinary action.  Rutledge also reexamined the score sheets and discovered several mathematical errors.  For instance, Arwood had shown a zero for disciplinary-point deductions for Boone despite the fact that Boone's personnel file contained disciplinary actions on several occasions for late arrival at work.  Rutledge also discovered that Golden's supervisor had recommended that Golden be suspended in May 2001, but that, after the promotion process had been announced, Arwood had rescinded this suspension so that this action would not harm Golden's chances in the promotion process.

Rutledge told Lewellen of these irregularities regarding disciplinary actions as well as Rutledge's concern that it may appear unfair and subjective.  Unlike Golden, Boone and another firefighter had not had their disciplinary actions rescinded by Arwood to increase their chances of

---

[2]The parties now agree that both Golden and Boone possessed the minimum qualifications necessary for the position of lieutenant at the time the promotions were announced in December of 2001.  J.A. at 65-66 (Golden Dep. at 133-34); J.A. at 98 (Rutledge Aff. at ¶ 24).

obtaining the promotion.[3] Given the inconsistencies regarding the treatment of disciplinary actions, Rutledge decided that this factor should not be included, and so he recommended removing discipline as a factor in the process for all lieutenant candidates. Lewellen agreed. When the testing and interview scores were recalculated without discipline, Boone remained in the top three, with Golden ranked fourth, only three-tenths of a point behind Boone. In a letter dated January 30, 2002, Lewellen advised Golden that he was denying Golden's grievance and explained the reasons for the decision. Lewellen then approved the promotion of the top three candidates to lieutenant and advised fire department personnel of this final decision in a February 11, 2002 memo.

Golden filed his complaint in this action on December 2, 2002, naming as defendants the Town of Collierville and James Lewellen, Dennis Rutledge, and Richard Arwood, in their official and individual capacities. Defendants filed their answer, and discovery ensued. After the discovery deadline passed in early 2004, defendants filed a motion for summary judgment on all claims. By order entered on May 27, 2004, the district court granted defendants' motion, dismissing the two federal claims and declining to exercise supplemental jurisdiction over the remaining state civil-conspiracy claim. Golden filed a motion to reconsider, but the district court denied the motion. Golden filed a timely notice of appeal.

---

[3]If discipline was considered, Boone and the other firefighter, who is white, would have received deductions of 1.7 points for running late, with no consideration of the lack of severity for these offenses nor of the fact that they had already been penalized for the offenses in the form of time off without pay and ineligibility for a pay raise for the year in which the suspension had taken place.

## II. ANALYSIS

### A. Standard of Review

We review the district court's grant of summary judgment de novo, using the same standard under Federal Rule of Civil Procedure 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). "The Court should believe the evidence presented by the nonmovant, and draw all justifiable inferences in [their] favor." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002) (citing *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 933-34 (6th Cir. 2000)). Summary judgment is proper when an opposing party has had adequate time for discovery and yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We review a district court's dismissal of pendent state law claims for abuse of discretion. *DePiero v. City of Macedonia*, 180 F.3d 770, 790 (6th Cir. 1999).

### B. Discussion

#### 1. Procedural Due Process Claim

Golden argues that he had a property interest in a promotion to lieutenant, and that Collierville's decision to promote Boone over him violated the Due Process Clause of the Fourteenth Amendment. In order to establish a procedural due process claim in a § 1983 action, Golden must establish that he: (1) had a life, liberty, or property interest protected by the Due Process Clause; (2) that he was deprived of his protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford him adequate procedural rights prior to depriving him of his protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). The district court assumed arguendo that Golden could establish a property interest, but held that he failed at the third element because

he was unable to show the inadequacy of state-law remedies. Because we hold that Golden is unable to establish the first element by identifying a protected property interest, we decline to address the second and third elements.

Golden claims that he has a constitutionally protected property interest in the promotion to lieutenant. Citing *Woolsey v. Hunt*, 932 F.2d 555, 562 (6th Cir. 1991), Golden argues that his constitutionally protected property interest in a promotion was created by his November 2001 conversation with Rutledge, in which Golden claims Rutledge actually promoted him to lieutenant, effective the following month. Golden claims that this conversation created an "implied contract or mutually explicit understanding" sufficient to create a property interest in the promotion deserving of Fourteenth Amendment protection. *Id*. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). We have held that "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409-410 (6th Cir. 2002). Thus Golden "can have no legitimate claim of entitlement to a discretionary decision." *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000). In order to assert a property interest in receiving a promotion, Golden "must point to some policy, law, or mutually explicit understanding that both confers the benefit *and* limits the discretion of the [Town] to rescind the benefit." *Med. Corp.*, 296 F.3d at 410 (emphasis added).

Golden is unable to meet this burden. For even if we were persuaded that his conversation with Rutledge effectively conferred the benefit of the promotion, Golden has not provided any

7

evidence that the terms of that conversation limited the defendants' discretion to rescind the promotion. *Id.* Golden admits that even when the department's decision to promote the first and second-ranked lieutenant candidates was made public within the department via email, that email stated that the promotions were "proposed" and not final. J.A. at 329 (Golden Dep. at 94). Any suggestion that a promotion discussed during Golden's private conversation with Rutledge would be final and unalterable when promotions publicly circulated in an announcement are merely proposed is nonsensical. Furthermore, the defendants' grievance procedure makes clear that the department retains the discretion to place on hold and ultimately deny a promotion after it is proposed. It is undisputed that the filing of a grievance procedure under Collierville Ordinance § 12.07 stays any final promotion; Golden himself relied upon this stay procedure when filing his grievance after the decision to promote Boone was announced. The defendants' discretion to rescind a proposed promotion is not limited to the extent that *Med Corp* requires in order for a property interest to be created. Golden has not identified a cognizable property interest, and therefore the district court properly dismissed his procedural due process claim.

## 2.  Equal Protection Claim

Golden also argues that defendants' failure to promote him violated the Equal Protection Clause of the Fourteenth Amendment. We analyze § 1983 equal protection claims under the framework governing Title VII discrimination claims. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). The district court properly analyzed this case as a failure-to-promote case. In a reverse-discrimination, failure-to-promote case, this court has held that in order to state a prima facie case, a plaintiff must demonstrate:  (1) "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority"; (2)

8

"that he applied and was qualified for a promotion"; (3) "that he was considered for and denied the promotion"; and (4) "that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Sutherland*, 344 F.3d at 614; *see also Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002). The district court granted summary judgment on this claim because that appellant could not demonstrate that the Collierville fire department is one of the unusual employers that discriminates against the majority.

The undisputed facts show that Golden has not been able to meet this first element. Golden has not provided any evidence of background circumstances to support his assertion that defendants discriminate against white employees. The entire upper management of the Collierville fire department is white. Of the fifteen fire lieutenants, only two (including Boone) are black. Of the fifteen drivers, only two are black. Further, it is undisputed that Collierville does not have any type of affirmative action plan. Additionally, the record is rich with Golden's admissions that he does not believe that the decision to promote Boone instead of him was motivated by race. Golden agreed that he had no reason to believe that Arwood did anything in the promotional process to discriminate against white employees. He admitted that he does not have any evidence to suggest that administrator Lewellen wanted to promote Boone because he is black. Golden further admitted that he does not believe that Lewellen, Rutledge, or Arwood intended to discriminate against him. When asked whether he had any reason to believe that appellees discussed taking any action against him because he is white, he stated, "[N]o, I wouldn't believe that at all." J.A. at 88 (Golden Dep. at 236). Golden stated that he doesn't "think black or white had anything to do with" promoting Boone. J.A. at 88 (Golden Dep. at 236). Instead, Golden claims that he believes defendants promoted Boone over him because they perceived Boone as litigious, and defendants were afraid

9

Boone "would make a racial issue" out of not being promoted. J.A. at 88-89 (Golden Dep. at 236-37).

Contrary to Golden's assertion that defendants were engaging in reverse discrimination, the district court concluded that the undisputed facts, including Arwood's rescission of Golden's suspension and Rutledge's desire to promote Golden over the higher-ranked Boone, indicates that defendants initially intended to discriminate against the minority rather than the majority. The record suggests that defendants became aware of this discriminatory inclination and decided to rectify the situation by promoting the three highest ranking candidates, regardless of race. We agree with the district court's conclusion that defendants' desire to avoid discrimination against minorities is insufficient to support an inference that they discriminate against the majority. Because Golden has not offered any evidence of "background circumstances" that suggest defendants discriminate against the majority, he has not established a prima facie case of reverse discrimination, and the district court did not err in dismissing his equal protection claim.

Golden's other equal protection theory, that he was differentially treated as a "class of one" without a rational basis, also fails. Appellant Br. at 24 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The fact that Boone was ranked above Golden after the testing and interviews is a rational basis for promoting Boone.

### 3. State Civil-Conspiracy Claim

Finally, Golden appeals the district court's dismissal without prejudice of his pendent state civil-conspiracy claim due to the lack of a viable federal claim. District courts have the discretion to dismiss pendent state-law claims where all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). Because we are not remanding any of plaintiff's constitutional claims for further

10

consideration, there is "no utility in sending back to the district court a single issue that turns upon state law and which would be better resolved by the courts" of the state in question. *DePiero v. Macedonia*, 180 F.3d 770, 790 (6th Cir. 1999). The district court did not abuse its discretion in declining to hear Golden's state civil-conspiracy claim.

## III. CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's judgment in favor of the defendants with regards to Golden's procedural due process and equal protection claims, and **AFFIRM** the dismissal of his state civil-conspiracy claim without prejudice.