**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0026n.06

Case No. 16-1357

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 13, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALBERT DIBRITO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CITY OF ST. JOSEPH, et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, BATCHELDER, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Albert DiBrito and Mark Clapp both worked at the City of St. Joseph's Public Safety Department ("PSD"). Clapp was the Director, and DiBrito was the Deputy Director. City Manager Richard Lewis would eventually fire DiBrito from his position as Deputy Director. DiBrito argues that he was fired for two complaints made about Clapp to Lewis—(1) complaint about Clapp's purchase of a firearm and (2) complaint about Clapp's alleged defamatory comments made to another officer. These complaints, according to DiBrito, were protected speech under the First Amendment. Because DiBrito's complaints are not

protected speech under the First Amendment and he has failed to establish a required element of a due process violation, we **affirm** the district court's grant of summary judgment.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

After an extensive career with the Federal Bureau of Investigations ("FBI"), DiBrito began working for the City of St. Joseph ("City") as the deputy director of the PSD. As deputy director, DiBrito reported to Clapp, PSD's director.

From the beginning, DiBrito began keeping notes of actions that Clapp took, and that DiBrito disapproved. In 2013, a city resident called the PSD requesting that a firearm be removed from her residence after her husband's death. Officer Tom Vaught met with the citizen, obtained the firearm, and obtained permission to destroy or auction the firearm. Vaught then turned the firearm over to Clapp. After deciding that he would like to keep the firearm for himself, Clapp began discussing with several individuals if he should purchase it. DiBrito advised Clapp not to purchase the firearm. However, Clapp took the firearm home with him and the next day he paid the city resident $50 for the firearm.

DiBrito decided to "check[]. . . some legal issues" related to Clapp's purchase of the firearm, including contacting the United States Attorney's office, but was unable to find any city policy or federal law that Clapp had violated.

In 2014, DiBrito had a disagreement with Jim Crowe, who was the command equal of DiBrito on the fire department side of the PSD. Crowe believed DiBrito had a role in Crowe's rejection from a police chief training program. After the incident, DiBrito met with Clapp to

---

[1] Because we do not find a constitutional violation, we need not discuss qualified immunity or municipality liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

discuss the issue. At this meeting, Clapp threatened DiBrito's termination if DiBrito had a role in Crowe's rejection.

The same day as the DiBrito-Clapp meeting, Clapp met with Vaught to discuss a promotion that Vaught did not receive. To counteract Vaught's questioning of the unfairness of the hiring process, Clapp told Vaught that the hiring of DiBrito was also unfair. Clapp went on to explain that the City's former city manager hired DiBrito even though other candidates had better qualifications because DiBrito was investigating the former city manager. Clapp told Vaught that DiBrito dropped the investigation in exchange for this job and project money.

Vaught told DiBrito about Clapp's comments. The next business day DiBrito filed a formal complaint with Lewis regarding Clapp's firearm purchase that occurred four months prior. Although DiBrito admitted that he could not find any policy that had been violated and that the United States Attorney's office had stated no federal law was violated, DiBrito suggested that Lewis contact the Michigan State Police to investigate. While DiBrito did not mention Clapp's comments to Vaught in the formal complaint, DiBrito did tell Lewis about the comments the following day.

Due to the complaint, Lewis investigated and placed Clapp on administrative leave. Lewis sent a copy of DiBrito's complaint to the Michigan State Police. The state police responded that it would not conduct a criminal investigation because "the elements to prove that a crime was committed and prove it beyond a reasonable doubt to a jury would be extremely unlikely." Lewis also determined that no city policy prohibited Clapp's conduct. To avoid this happening again in the future, Lewis directed DiBrito to draft a policy prohibiting the conduct.

The investigation left Lewis "troubled by the background of the complaint," and he believed that DiBrito's "own words and statements" indicated that DiBrito knew Clapp had not

violated the law. The investigation also revealed numerous management issues within the PSD. Therefore, the City hired Theresa Smith Lloyd, an attorney, to conduct a third-party investigation.

After interviewing a number of city employees, Lloyd submitted a report in 2014. The report concluded that Clapp's statements to Vaught regarding DiBrito's hiring were "inappropriate statements for a commanding officer to make regarding a second in charge," and the "issue should be dealt with appropriately within the department." The report also stated that many employees had raised issues regarding DiBrito's "honesty, inappropriate statements to subordinates regarding a commanding officer, favoritism, and retaliation," and such issues "must be addressed with DiBrito." After receiving this report, Lewis terminated DiBrito and suspended Clapp for five days without pay.

After his termination, DiBrito sued the City, Lewis, and Clapp ("Defendants"). DiBrito alleged that his termination violated his constitutional rights under the First Amendment and Due Process Clause, as well as Michigan statutory and common law. The district court granted summary judgment to the Defendants on the federal claims and declined to exercise jurisdiction over the state-law claims.

## STANDARD OF REVIEW

"We review de novo the district court's grant of summary judgment." *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 431 (6th Cir. 2008) (citing *Lenscrafters Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005)).

**DISCUSSION**

I.     **First Amendment Retaliation**

DiBrito argues that Lewis and Clapp fired him due to his constitutionally protected speech in violation of the First Amendment.  In particular, DiBrito argues that he made two constitutionally protected statements: (1) the complaint about Clapp's purchase of the firearm and (2) the complaint about Clapp's statements to Vaught.

a.  **Legal Standard**

A plaintiff alleging a claim of First Amendment retaliation must demonstrate that (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from engaging in such conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012).

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  "However, public employees do not forfeit all their First Amendment rights simply because they are employed by the state or municipality."  *Handy-Clay*, 695 F.3d at 539.  Instead, the Supreme Court has "sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions."  *Garcetti*, 547 U.S. at 420.

To accomplish this goal, "the Supreme Court has established a three-part test for evaluating whether a public employee's speech is constitutionally protected."  *Handy-Clay*, 695 F.3d at 540.  The plaintiff must show:

> (1) that h[is] speech was made as a private citizen, rather than pursuant to h[is] official duties; (2) that h[is] speech involved a matter of public concern; and (3)

that h[is] interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.* (citation and internal quotation marks omitted).

### b. Constitutionally Protected Speech

DiBrito argues that both of his statements are constitutionally protected because the statements were made as a private citizen and related to a matter of public concern. DiBrito argues that he submitted the complaints because of ethical and efficiency concerns at the PSD. These statements, according to DiBrito, were made as a "concerned" private citizen. Similarly, DiBrito argues that both statements implicated public concern. As for the complaint about Clapp's firearm purchase, DiBrito argues that it raises a matter of public concern because the firearm was public property and misappropriated by Clapp. As for the complaint about Clapp's comments to Vaught, DiBrito argues that it rises to the level of a public concern because it alleges a serious allegation—defamation—rather than a normal run-of-the-mill employment dispute.

We disagree. As discussed below, we find that DiBrito did not engage in constitutionally-protected speech. First, DiBrito's complaint about Clapp's firearm purchase was made pursuant to his official duties as Deputy Director of Public Safety rather than a private citizen. Second, DiBrito's complaint about Clapp's comments to Vaught did not relate to a matter of public concern rather a private intra-office employment dispute.

### i. Complaint About Clapp's Firearm Purchase

The First Amendment does not insulate a public employee from employer discipline when the employee makes a statement pursuant to his official duties. *Garcetti*, 547 U.S. at 421. In *Garcetti*, the Supreme Court explained:

> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id.* at 421–22. In *Lane v. Franks*, 134 S. Ct. 2369 (2014), the Court made clear that the *Garcetti* exception is narrow. The exception does not apply to "speech that simply relates to public employment or concerns information learned in the course of public employment," but "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 2379. We have explained, "[a]fter *Lane*, the *Garcetti* exception to First Amendment protection for speech . . . must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment." *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015).

DiBrito's complaint about Clapp's firearm purchase was made "in furtherance of the ordinary responsibilities of his employment."[2] *Id.* DiBrito, as Deputy Director of Public Safety, was the second highest ranking law enforcement officer in the City. Among other duties, DiBrito "assumes command of the Public Safety Department (including fire division) in the absence of the Public Safety Director" and "performs all the duties of a police officer." Furthermore, DiBrito admitted that he was involved with the day-to-day action at the police department going to the scene of a crime and responding to calls. He testified, for instance, that he would go on patrol with the officers when they were short staffed and liked to be "shoulder-to-shoulder" with his subordinates. *See Garcetti*, 547 U.S. at 424–25 (describing the proper

---

[2] It must be noted that the district court incorrectly cited DiBrito's job duties. The district court cited the job duties of the Director rather than the Deputy Director. But, both parties agree that this was incorrect; therefore, it is not a dispute of material fact that can overcome summary judgment. DiBrito has also attached the correct job duties to his opening brief. We have considered the correct job duties in reviewing this case de novo.

inquiry as a practical one to determine whether something is within the job duties of the employee).

As a police officer, DiBrito felt that Clapp had violated the law when he purchased the firearm given to the PSD. After reviewing the state law and contacting federal officials, DiBrito prepared a complaint to Lewis. This complaint was prepared on department letterhead, referenced a police report regarding the turned-in firearm, made recommendations regarding additional investigations that should be undertaken, and was signed "Deputy Director Al DiBrito." These facts prove that DiBrito was acting as Deputy Director of the PSD rather than a "concerned" citizen.

Therefore, DiBrito's complaint about Clapp's firearm purchase is not protected because it was made pursuant to his official duties rather than as a private citizen. *See id.* at 422.

### ii. Complaint About Clapp's Comments to Vaught

Even if an employee speaks as a private citizen, the speech is not protected unless it relates to a matter of public concern. "In general, a matter of public concern is a 'matter of political, social, or other concern to the community.'" *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Courts must "distinguish matters of public concern from internal office politics." *Id.* Courts are to consider the content, form, and context of the statement in light of the record. *Connick*, 461 U.S. at 147–48.

Following *Connick*, we have held "mere assertions of incompetence and poor management decision-making to be run-of-the-mill employment disputes—particularly when the recommended course of action would benefit the employee." *See Boulton*, 795 F.3d at 532 (listing cases). Speech addresses matters of public concern "when it alleges corruption and

misuse of public funds, failure to follow state law, major state policy decisions, or discrimination of some form." *Id.* (internal citations omitted).

DiBrito's complaint about Clapp's comments to Vaught was an employment grievance concerning matters of personal interest—the allegedly defamatory comments. While DiBrito argues that he was raising serious allegations of defamation which "threaten[ed] the continued effective operation of the [PSD]," that argument is unpersuasive. In *Connick*, the Supreme Court explained that not all matters within a government office are matters of public concern:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

461 U.S. at 149. Therefore, a federal court, through a First Amendment challenge, is not the appropriate forum to determine whether a supervisor's alleged unprofessional conduct threatens the effective operation of a public office.

Thus DiBrito's complaint about Clapp's comments to Vaught is not protected speech because it concerns an employment dispute rather than a matter of public concern. *See Boulton*, 795 F.3d at 532.

## II.     Due Process

In addition to the First Amendment retaliation claim, DiBrito also asserts that his termination violated his rights under the Due Process Clause. In his complaint, DiBrito states that his right to substantive due process was violated. This claim fails too. *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 2002) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government

behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))). At summary judgment, DiBrito offered clarification to his claim stating that he suffered injuries to his reputation and good name which threatens his individual freedom to pursue business or employment opportunities. *See Med Corp. v. City of Lima*, 296 F.3d 404, 414 (6th Cir. 2002). We have held that an injury to one's reputation, good name, honor, or integrity constitutes a deprivation of a liberty interest when five elements are met. *Id.*

In this case, DiBrito fails to satisfy the second element: "foreclose[ure] [of] his freedom to take advantage of other employment opportunities." *Id.* (citation omitted). DiBrito has failed to provide any evidence that the statements have prevented future employment opportunities. Instead, he provides naked allegations that the statements "by their nature would cause an uncrossable barrier for [him] seeking future employment with a law enforcement employer." This is not enough. A statement that "merely makes a plaintiff less attractive to other employers . . . does not constitute a liberty deprivation." *Id.* (quoting *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997)). Even a denied business opportunity—something DiBrito has not demonstrated—"does not deprive a person of a liberty interest, for the ability to obtain future business or employment opportunities is not jeopardized." *Id.* (quoting *Bannum, Inc. v. Town of Ashland*, 922 F.2d 197, 201 (4th Cir. 1990)).

**AFFIRMED.**