Jim GREGG d/b/a Gregg's Holiday Gulf & Wrecker Service, Plaintiff,

v.

Robert LAWSON, Commissioner of Tennessee Department of Safety, Defendant.

No. CIV–3–89–0493.

United States District Court, E.D. Tennessee, N.D.

Nov. 7, 1989.

Terry M. Basista and Vic Pryor, Basista, Young, Parrott & Pryor, Knoxville, Tenn., for plaintiff.

Charles Burson, Atty. Gen. and Brenda Rhoton Little, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

In this civil rights action for monetary and injunctive relief under 42 U.S.C. § 1983 and for declaratory judgment under 28 U.S.C. § 2201, the plaintiff Jim Gregg, who does business as Gregg's Holiday Gulf & Wrecker Service, has sued the defendant Robert Lawson, the Tennessee Commissioner of Safety (the Commissioner), for alleged violations of his rights to due process and equal protection and challenges an alleged retroactive application of a regulation of the Tennessee Department of Safety; he also asserts pendent claims under the law and Constitution of Tennessee. The plaintiff sues the defendant in his official capacity only and demands monetary damages as well as injunctive relief and attorney's fees. [Doc. 1.] The defendant

has filed a motion to dismiss [docs. 5, 5A, and 7], to which the plaintiff has responded [doc. 6], and the motion is now ripe for disposition.

In this procedural posture, the Court takes the allegations of the complaint as true. The plaintiff alleges that he has operated a wrecker service since about 1983 and has been on the Tennessee Department of Safety (TDOS) rotational wrecker call list since 1983. This call list is used by the TDOS to obtain wrecker services to tow stranded, disabled, seized, or confiscated vehicles. Prior to January 1, 1989, to remain on the call list, wrecker service providers had to maintain certain standards of safety, equipment, and other qualifications such as insurance. Providers were subject to annual inspections and other regulatory oversight by the TDOS. Safe and secure storage facilities for towed vehicles were required under the regulations. [Doc. 6, ex. B.]

On July 1, 1988, the Commissioner issued revised general order 465–1 on wrecker service standards. [Doc. 1, ex. A; doc. 6, ex. A.] The purpose of the revised order was "[t]o establish policy, procedures, and regulations for members of the [TDOS] concerning" the provision of wrecker services. Under section III.B, the commissioner, added a previously unenumerated requirement that "[w]recker service owners with a felony record will not be allowed to be on the ... call list." The revised order was effective January 1, 1989, and on January 20, 1989, the plaintiff was notified that he was excluded from the rotational call list because he had been convicted of the felony of aggravated assault in 1984. This conviction arose out of a domestic situation in which the plaintiff had an altercation with a competing suitor of a romantic interest. The plaintiff states that he has suffered substantial economic losses as a result of being removed from the call list.

The defendant contends that the plaintiff can have no property interest in remaining on the call list and thus that he has not been denied due process by being removed from the list after notification and that notification was of itself sufficient due pro-

cess under the circumstances. Further, the defendant argues that the plaintiff has not been denied equal protection of the law and that the regulation has a rational relation to the State's interest in assuring that vehicles towed and stored will be safely, securely, and properly stored and handled by wrecker service providers. The Commissioner states that the regulation is merely an internal matter intended to govern the use of wrecker services by TDOS employees. Further, the defendant argues that the regulation is not being given retroactive application because the plaintiff has no vested property interest in remaining on the call list. The regulation is simply an exercise of the State's legitimate police powers. In addition, since the action is brought against the Commissioner solely in his official capacity, the plaintiff's claim is barred by the Eleventh Amendment; moreover, not only is the plaintiff's claim for monetary damages barred, but because the State is the real party in interest, the plaintiff's claim for injunctive relief is also barred under the Eleventh Amendment.

The plaintiff responds that he has a sufficient property interest in remaining on the call list because a mutually recognized entitlement arose under the prior regulation, requiring that the plaintiff be afforded due process before being removed from the list. Furthermore, he contends that the present regulation creates an irrebuttable presumption that all felony convictions disqualify such persons from providing wrecker services regardless of the nature of the crime or the person's present fitness to provide such services. The plaintiff also argues that the regulation does not rationally relate to the asserted governmental interest because the blanket exclusion of all felons has not been shown to be required to serve the purported purpose of the regulation. In addition, the plaintiff contends that the regulation can be given prospective effect but by removing him from the list after over five years of remaining on it constitutes a retroactive application of the regulation. The plaintiff further states that the exercise of pendent jurisdiction over the State claims is proper because the same facts and circumstances

### 1. Applicability of Eleventh Amendment

The Court first addresses the issue of whether the plaintiff's claims are barred under the Eleventh Amendment because this issue could be entirely dispositive of the case. The plaintiff states in his complaint that the defendant is the Commissioner of Safety for the State of Tennessee [doc. 1, ¶ VI] and he does not dispute the defendant's assertion in his motion to dismiss [doc. 5A, at pp. 1 and 14–16] that this action is brought against the Commissioner solely in his official capacity.[1]

■■■ The law is firmly established "that a suit by private parties seeking to impose a liability which must be paid from public funds in the State treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) (citations omitted). Consequently, the plaintiff's claim for monetary damages is clearly barred by the Eleventh Amendment. *E.g., Long v. Richardson*, 525 F.2d 74, 79 (6th Cir.1975). Prospective injunctive relief against a State official is not necessarily barred by this Amendment. *Edelman v. Jordan, supra*, 94 S.Ct. at 1356. As the Supreme Court observed, "[t]hough a § 1983 action may be instituted ... a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief...." *Id.*, 94 S.Ct. at 1362 (citations omitted).

In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court reaffirmed the long-standing rule that the Eleventh Amendment is not a bar to a suit under § 1983 against a State official to obtain prospective injunctive relief; however, if a suit is nominally against a State official in his official capacity but the State is the real party in interest and the relief, in any form, would operate directly against the State, then "as when the State itself is named as the defendant, a

suit against State officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 908–909, 79 L.Ed.2d 67 (1984). Nevertheless, "[t]he Court has recognized an important exception to this general rule: A suit challenging the constitutionality of a State official's action is not one against the State." *Id.*, 104 S.Ct. at 909 (citation omitted). This is based on the legal fiction that unconstitutional actions strip the official of representative capacity so that the injunction operates against the official personally to control the official's conduct. · *Id.*

The Court thus concludes that while the plaintiff's claim for monetary damages is barred the the Eleventh Amendment, his claims for declaratory judgment as to the constitutionality of the revised general order and for prospective injunctive relief requiring the defendant to reinstate his name on the rotational call list, which would neither operate against the State itself nor result in the expenditure of funds that were not already budgeted for this purpose, are not barred by this provision of the Constitution. To hold otherwise would essentially eviscerate the Fourteenth Amendment, which clearly constricts the power of State officials to engage in conduct that deprives a person of federally protected rights.

### 2. Existence of a Protectable Property Interest

#### A. Nature of Interest

■■ The next determinative issue is whether the plaintiff has a property interest in remaining on the call list. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), the Supreme Court recognized that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits. These inter-

---

**1.** The Court notes that the plaintiff does not directly respond to the defendant's argument that the Eleventh Amendment bars this action in his response [doc. 6] to the defendant's motion to dismiss.

ests—property interests—may take many forms." For a property interest to exist, it must be more than an abstract or speculative desire or need and it must be "more than a unilateral expectation of it." *Id.*, 92 S.Ct. at 2709. "[A] legitimate claim of entitlement" must exist. *Id.*

A similar case to the present action arose in Georgia. In *Durham v. Jones*, 698 F.2d 1179 (11th Cir.1983), the plaintiff requested that he be placed on a towing list and the local official refused. In *Durham*, the list was not publicly maintained, no printed rules or regulations governed the list, no formal procedure was followed for applications to be placed on the list, and no contractual relation was formed by being placed on the list. *Id.*, at 1180. The Eleventh Circuit found on these facts, as well as other circumstances showing a history of relevant misconduct by the plaintiff, the plaintiff had no protectable property interest in being placed on the list because he had never been on the list and had never been used previously by the defendant. *Id.*, at 1181. In the course of coming to this conclusion, the Court of Appeals observed that "[w]hile absence of a contractual right to employment does not preclude the existence of a property interest, the plaintiff must show a mutually recognized entitlement, as opposed to a unilateral expectation of a benefit, to establish the existence of a property interest." *Id.* (citations omitted). This kind of property interest was recognized by the Supreme Court in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.*, 92 S.Ct. at 2699 (citation omitted).

In the case before the Court, the plaintiff had been included on the call list from 1983 until January, 1989. The plaintiff's services had been utilized and he had received economic benefits as a result. He complied with all requirements of the written regulations, which would require the expenditure of substantial funds. Unlike the plaintiff in *Durham*, he has not been accused of any misconduct relating to the operation of the wrecker service. Moreover, the regulations in effect prior to the revised general order clearly create an expectation that a provider will be called on a regular rotating basis. Under section VII, trucks were to be available 24 hours a day for immediate response and failure to "respond in a reasonable length of time" resulted in calling the next provider on the list. [Section VII. A.1.] Providers were required to accept collect telephone calls from the TDOS dispatcher "or lose their place on rotation." [Section VII.B.] In addition, "[a] wrecker operator who fails to answer his call will lose the call. If he misses three calls, an investigation will be made by the [TDOS] and suspension or removal will be considered." [Section VII.L.] Failure to respond without reason could cause a provider to be removed from the list. [Section VII.N.] The providers were required to assist State highway patrol troopers at accident sites as directed. [Section VII.O.] The rates charged by the providers had to be competitive and the TDOS would "remove from the ... call list any wrecker service whose tow rates are excessive when compared against other wrecker services providing the same service in the same general area." [Section VII.R.] Additional regulations in the prior general order governed the operation of wrecker services on the call list [sections III, IV, V, VI, and VIII], and "[f]ailure to meet the foregoing requirements will prevent placing a wrecker on the ... call list." [Section VIII.E.] Clearly, these regulations are more than a mere internal matter and benefit as well as govern the conduct of both the TDOS and the service provider. The several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the call list.

The Court finds that the plaintiff has sufficiently alleged "a legitimate claim of entitlement," *Board of Regents v. Roth*, 92 S.Ct. at 2709, based on these "rules or mutually explicit understandings," *Perry v.*

854

*Sindermann,* 92 S.Ct. at 2699. This case is distinguishable from *Durham v. Jones, supra,* on its facts. Unlike *Durham,* printed rules and regulations govern the parties' conduct and formal application procedures exist for anyone wanting to be placed on the list. The plaintiff had been on the list for several years without incident and had been utilized by TDOS officials. Under the regulations, the plaintiff had more than a mere unilateral expectation of a benefit and thus has acquired a sufficient property interest in remaining on the list. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

### B. Due Process

Having established that a sufficient property interest has been alleged, the question becomes whether due process was required to remove the plaintiff from the list. The Supreme Court has recognized that the concept of due process is flexible and " 'what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' " *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (citations omitted). The legitimacy of the State's goals are not the issue; rather, the Court's obligation is "to determine whether the means used to achieve these ends are constitutionally defensible." *Id.,* 92 S.Ct. at 1213.

In *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Supreme Court found that while a State might make blanket rules and regulations governing the issuance of drivers' licenses, once issued, the holder could acquire a sufficient property interest to require the safeguards of procedural due process prior to being subsequently deprived of the license. That process must be fundamentally fair, that is, it must be tailored to the protection of the legitimate property interest and provide the holder with sufficient opportunity to vindicate or protect those interests. Neither the nature of the State's interest nor the expense of providing adequate due process can override the person's right to due process. *Id.,* 91 S.Ct. at 1589–1590. In *Bell,* the failure of the State to provide some procedure by which to weigh and accommodate a person's property interest in a driver's license was found violative of due process because the procedure followed excluded "consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended," *id.,* 91 S.Ct. at 1591, and thus did not provide a meaningful opportunity to vindicate the person's property interest. A pretermination hearing is required. *Id.* In short, "[w]hether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' " *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (citation omitted).

■ The Court has already examined the nature of the plaintiff's interest. That the plaintiff will suffer sufficient loss is adequately alleged. The State's interest in this case is the establishment of the policy, procedures, and regulations governing wrecker service utilization by the TDOS to assure the safe and efficient removal, storage and safekeeping of vehicles towed by and in the custody of wrecker services. [Docs. 6, ex. A, §§ I, II; doc. 5A, at p. 7.] The State contends that exclusion of all felons from the call list serves these goals. The plaintiff, however, was utilized for several years by the TDOS despite his 1984 conviction apparently without incident. How a felony conviction for what was seemingly a crime of passion interferes with the State's interest is not clear on the record before the Court. The State makes no persuasive argument to justify how a blanket exclusion of all felons serves its interest in this case. In fact, the State has a significant interest in encouraging persons formerly convicted to rehabilitate themselves and to operate legitimate businesses. The Court could understand how a conviction for theft, fraud, the sale or distribution of narcotics, burglary, or similar crimes of dishonesty might rationally be considered a disqualification, but how every felony conviction, regardless of the cir-

cumstances or the nature of the crime, disqualifies a person from providing wrecker services to the State is not clear to the Court. In *Bell v. Burson, supra,* a similar inflexible rule that permitted no examination of the circumstances surrounding the deprivation of a license was considered violative of due process. The State may in fact be correct that reasons for a blanket rule do exist but they have not been convincingly shown to justify dismissal of this claim.

Moreover, the blanket exclusion might be applied in the future to persons who had not been on the list previously, but the plaintiff was not given any opportunity to show that in his case, after having been on the list for an extended period without incident, exclusion would be unfair, unnecessary, and arbitrary. *Cf. Bell v. Burson, supra,* 91 S.Ct. at 1589 (statute establishing blanket rule prohibiting issuance of licenses in the future to anyone without liability insurance would have been constitutional). How a person who was previously qualified to be used and was in fact used by the State suddenly became disqualified due to a preexisting felony conviction for a crime wholly unrelated to any interest asserted by the State is not sufficiently clear at this point to justify dismissal of the plaintiff's claims. A simple letter informing the plaintiff that he had become disqualified to do what he had previously been doing satisfactorily does not appear to be sufficient due process on the record presently before the Court.

3. *Equal Protection*

The State next contends that the plaintiff has not been denied equal protection under the Fourteenth Amendment. It argues that the regulation has a rational relation to legitimate State interests and is not intended to punish the plaintiff for his felony conviction and does not disqualify him from otherwise engaging in his business. The plaintiff is not a member of a suspect or protected class requiring heightened scrutiny under the Fourteenth Amendment, *e.g., Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 1908–1909, 52 L.Ed.2d 513 (1977), and thus the issue is whether the regulation bears "a rational relation to a legitimate State interest." *Id.* 97 S.Ct. at 1908. The plaintiff has not alleged that he has been treated any differently from other persons in a similar position who also have felony convictions. He simply contends that the classification on the basis of a felony conviction is not rational because the State completely disregards the nature and circumstances of the crime and has created an arbitrary blanket prohibition against using any felon as a wrecker service provider.

In *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), the Supreme Court held that "[a] State cannot exclude a person ... from [an] occupation in a manner or for reasons that contravene the due process or equal protection clause of the Fourteenth Amendment." *Id.,* 77 S.Ct. at 756 (citation omitted). Any qualification or requirement must bear a rational relation to the person's fitness to engage in the occupation or business. *Id.* "Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet the standards...." *Id.*

In *Schware* the court examined whether the State had a basis on which to exclude the plaintiff from sitting for the bar examination for lack of good moral character. *Id.* One of the basis on which the State refused the plaintiff the opportunity to take the bar examination was his history of arrests. The court examined the circumstances of these arrests and his conduct since that time, *id.,* 77 S.Ct. at 757–758. The court observed that "[i]n determining whether a person's character is good the nature of the offense which he has committed must be taken into account." *Id.,* 77 S.Ct. at 758.

In the present case, the plaintiff was given no forum in which to attempt to vindicate his interest in remaining on the list; however, of itself, "a classification based on criminal record is not a suspect classification," *Upshaw v. McNamara,* 435 F.2d 1188, 1190 (1st Cir.1970), but a blanket

prohibition such as that in the present case can violate the equal protection clause if it is so overbroad that it is "not constitutionally tailored to promote the State's interest in [regulating] certain ... occupations." *Smith v. Fussenich*, 440 F.Supp. 1077, 1080 (D.Conn.1977) (*en banc*). If a regulation "fails to recognize the obvious differences in the fitness and character of those persons with felony records," *id.*, at 1080, based on the differences in the nature of the crimes committed in relation to the person's fitness to engage in a particular occupation, *id.*, then that regulation may violate equal protection.

The Court is of the opinion that the plaintiff's claim of denial of equal protection is viable but that his interest can be vindicated by the same remedy, if appropriate, that may attach to the alleged violation of due process, that is, the opportunity to show that his conviction does not adversely affect his ability to provide wrecker services. The plaintiff's equal protection and due process claims are clearly intertwined.

The Court is not ruling at this juncture, however, that a prospective blanket rule against using felons in this capacity of itself violates equal protection; that is an issue for determination on the merits. Upon disposition of the case on the merits, the State will have the opportunity to show that a legitimate government interest is served by a blanket prohibition on felons due to a demonstrated need to revise the general order because of problems experienced with persons with felony convictions in the provision of such services. *Cf. De Veau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960). The Court is simply not convinced at this point that a legitimate State interest is served by such a broad rule that provides no procedure to determine whether in a particular case its application to a person who has previously been utilized by the State for providing wrecker services is justified, fair, and rational. *See, e.g., Kindem v. City of Alameda*, 502 F.Supp. 1108, 1112 (N.D.Calif.1980) ("Employment is denied to individuals, like the plaintiff, who were convicted of felonies bearing no relationship whatso-

ever to the individual's honesty or his ability to work").

### 4. *Retroactive Application of the Regulation*

■ In the course of the foregoing discussion, the Court has clearly considered the fact that the State's revised regulation was applied to the plaintiff in a manner that, on the facts as alleged, deprived him of a benefit he had already acquired by having been previously placed on the call list. The reasons given by the Court clearly take into account the retroactive application of the regulation to the plaintiff. Since the plaintiff's property interest vested under the previous regulation, the application of the blanket prohibition to him constituted a retroactive application of the revised regulation, which might otherwise be legitimately applied in a prospective manner. *See Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964). Again, this issue is intertwined with the plaintiff's due process claim.

### 5. *Pendent Claims*

■ In the Court's opinion, the exercise of pendent jurisdiction over the plaintiff's State claims would be inappropriate. While these issues are all related and could be decided without requiring the Court to take substantially more evidence than would otherwise be presented, the Court is persuaded that the pendent issues cannot be decided in a federal forum under the Eleventh Amendment. *See Pennhurst State School and Hospital v. Halderman, supra*, 104 S.Ct. at 918–919.

Accordingly, the Court ORDERS:

1. That the defendant's motion to dismiss [docs. 5, 5A, and 7] is GRANTED IN PART and the plaintiff's claim for monetary damages and all pendent claims are DISMISSED as barred by the Eleventh Amendment; and

2. That the defendant's motion to dismiss is DENIED IN PART as to the plaintiff's actions under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 for declaratory and injunctive relief.

The Court expresses no opinion controlling the ultimate disposition of this action.