NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0703n.06

CASE No. 19-1688

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN HEYKOOP, d/b/a EAGLE TOWING, | ) ) ) | **FILED** |
| *Plaintiff-Appellee*, | ) ) | Dec 16, 2020 DEBORAH S. HUNT, Clerk |
| v. | ) ) ) | **ON APPEAL FROM THE UNITED STATES DISTRICT** |
| MICHIGAN STATE POLICE, *et al.*, | ) ) | **COURT FOR THE WESTERN DISTRICT OF MICHIGAN** |
| *Defendants-Appellants*. | ) ) | |

Before: BATCHELDER, GIBBONS, and SUTTON, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** In this civil rights action by a towing company claiming a violation of procedural due process in its removal from two police-station call lists, the defendant police lieutenants appeal the denial of qualified immunity. We affirm.

The defendants in this interlocutory appeal are Michigan State Police (MSP) Department First Lieutenants Jeffrey White and Chris McIntire, who are Post Commanders for the MSP Hart and Rockford Posts, respectively. The plaintiff is John Heykoop, doing business as Eagle Towing, which, for several years, had been on the "No Preference Wrecker Call List" for both Posts.

On November 13, 2017, without any prior warning, Lt. White removed Eagle Towing from the Hart Post List, sending Heykoop a two-sentence letter explaining only that: "This [removal] is due to the quality and type of service that Eagle Towing has provided with in the Hart Post are[a]." On December 14, 2017, Lt. McIntire did likewise, removing Eagle Towing from the Rockford Post List in a similar two-sentence letter, explaining only that: "Your removal from the list is a direct result of the unacceptable service that you have provided within the post area." No facts or

explanation supported these proffered reasons; instead, each defendant had received a single complaint (one a year earlier and the other three years earlier) about Eagle Towing's *pricing*, but neither had ever received a complaint about the quality of the towing service. It turned out that both defendants removed Eagle Towing from their Lists because the local sheriff had done so.

When Heykoop submitted new applications to be placed back on the Lists, the defendants refused to accept the mail and, when Heykoop persisted until they did accept the applications, the defendants simply ignored them. So Heykoop sued in federal court under 42 U.S.C. § 1983.

Heykoop claimed a violation of procedural due process, asserting a property interest in his remaining on the Lists pursuant to MSP Official Order No. 48, which requires towing companies to satisfy and demonstrate certain conditions, including towing capacity, yard storage capacity, state certification, insurance, workers compensation, etc., and provides, in pertinent part;

48.3.12. COMPLAINT PROCEDURES
A. Complaint Against a Wrecker Service
   (1) Problems with or *complaints about a wrecker service shall be documented* by the work site commander. The *documentation shall be retained* for the duration of the wrecker service's contract with the department, or their time on the wrecker list, plus two years.
   (2) Members shall report to their immediate supervisors the name of any wrecker service or their employee that renders poor service, or that is incapable of providing quality service because of inadequate equipment or personnel.
   (3) Members who become aware that a wrecker service has intentionally violated Chapter II of the Michigan Vehicle Code shall inform their work site commander of the reported violations.
       a. A work site commander who learns of intentional violations of Chapter II of the Michigan Vehicle Code shall ensure a thorough investigation into the incident and seek criminal prosecution if warranted.
       b. A wrecker service who is found to have intentionally violated Chapter II for financial gain shall immediately have their contract canceled or be removed from the no-preference wrecker call list.
   (4) *Each wrecker service shall be held to identical standards of conduct or performance*.

(5) *When a complaint is received* concerning the performance or rate change of a wrecker service or the service is not adhering to the requirements established by this Order, *the complaint shall be immediately investigated*.

    a.  Unless extenuating circumstances exist, *a wrecker service shall not have their contract cancelled or be removed from the no-preference wrecker call list without an investigation* by the work site commander or their designee.

    b.  If it is found that the wrecker service failed to comply with the requirements of this Order, *a written notice shall be sent describing the complaint and the action needed to maintain a position on the no-preference wrecker call list*.

    c.  Wrecker services shall be *notified in writing* of any non-compliance with accepted standards of conduct *in a timely manner, and advised that they have the right to an appeal* in writing to the work site commander before administrative or disciplinary action can be taken. The written notice shall indicate that additional complaints could result in removal from the list.

(6) If an additional complaint is received concerning a wrecker service within a year, another investigation shall be conducted by the work site commander or their designee.

    a.  A copy of the report shall be sent to the Hazardous Materials and Investigation Unit commander, CVED, for further review and investigation.

    b.  The CVED shall notify the work site of the results of any investigation.

B. Complaints from a Wrecker Service

Complaints or concerns from a wrecker service shall be investigated by the work site commander or their designee. If their complaint cannot be handled at the local work site, the information shall be forwarded to the Hazardous Materials and Investigation Unit commander, CVED Headquarters. The CVED shall make contact with the MPSC when necessary.

MSP Order 48 (emphasis added). In this lawsuit, Heykoop claimed the defendants had not followed any of these requirements when removing Eagle Towing from their Lists and the defendants admitted as much in their depositions during discovery. Thus, Heykoop moved for summary judgment. He also claimed First Amendment retaliation, equal protection (class of one), and conspiracy; sought leave to amend his complaint to include a substantive due process claim; and requested an injunction returning Eagle Towing to the Lists as part of the remedy.

The defendants also moved for summary judgment, based in part on qualified immunity, arguing that a towing company's remaining on a police call list is not a clearly established property interest. At the hearing on the motions, the district court issued an oral decision, granting the defendants summary judgment on the First Amendment, equal protection, and conspiracy claims, and denying Heykoop leave to amend his complaint because a substantive due process claim would be unavailing. But the court denied qualified immunity on the procedural due process claim, holding that Sixth Circuit precedent and MSP Order 48 created a property interest in Eagle Towing's remaining on the list, though the process that was due was a question for a jury. The defendants filed this interlocutory appeal from that denial of summary judgment.

The denial of summary judgment is ordinarily not a final decision within the meaning of 28 U.S.C. § 1291, and, accordingly, it is generally not immediately appealable. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). But the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of [] § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Our jurisdiction is, however, limited: "we may not decide a challenge aimed solely at the district court's determination of the record-supported evidence, but we may decide a challenge with any legal aspect to it, no matter that it might encroach on the district court's fact-based determinations." *Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018). Under our pragmatic approach, we "excise the prohibited fact-based challenge so as to establish jurisdiction." *Id.* In so doing, "we follow the same path as did the district court—considering the sufficiency of the plaintiff's proffered evidence, drawing all reasonable inferences in the plaintiff's favor—and, ideally, we would need look no further than the district court's opinion for the pertinent facts and inferences." *Id.* But we are not limited to only those facts and inferences; rather, we must make our legal determination "based on th[e] now (for this purpose) undisputed record facts." *Id.* at 56.

4

Proceeding thusly, we have jurisdiction over this interlocutory appeal from the denial of the defendants' claims of qualified immunity.

Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "is an *immunity from suit* rather than a mere defense to liability," *Mitchell*, 472 U.S. at 526; it allows officials—such as the lieutenants here—"breathing room to make reasonable but mistaken judgments," *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quotation marks and citation omitted); and it "protects all but the plainly incompetent or those who knowingly violate the law," *id.* The plaintiff in a § 1983 action bears the burden of overcoming the qualified-immunity defense. *Bunkley*, 902 F.3d at 559. At the summary-judgment stage, the plaintiff must show both that the defendant official violated a constitutional right and that right was clearly established. *Id.* At a minimum, this requires evidence of a "genuine issue of fact"; that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 275 (1986).

The defendants argue that the district court erred by holding that *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000), serves as clearly established law that, combined with MSP Order 48, gave the plaintiff towing company a property interest in remaining on a police call list. In *Lucas*, the plaintiff alleged that its removal from the stand-by tow call list without notice and an opportunity to be heard violated its due process rights but the district court dismissed the claim, finding that the plaintiff lacked a protected property interest in remaining on the stand-by list. *Id.* at 978. On appeal, the panel explained that "[t]he mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest; instead a 'legitimate claim of entitlement' must exist. . . . [and] [i]n the instant case, . . . [the] [p]laintiff[] can point to no

ordinance, contract[,] or other 'rules of mutually explicit understandings' that support [its] claim

of entitlement to remain on the stand-by list." *Id.* (citations omitted). The panel continued:

> In *Gregg* [*v. Lawson*, 732 F. Supp. 849, 853 (E.D. Tenn. 1989)], the [district] court held that the plaintiff had a 'legitimate claim of entitlement' in remaining on the wrecker tow list, on grounds that several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the list. In this case [i.e., *Lucas*], there are no such established procedures for suspension or removal.

*Id.* (quotation marks and citation omitted). Thus, the *Lucas* panel concluded, the "policies [in

*Lucas*] did not create a legitimate claim of entitlement to remaining on the tow call list." *Id.*

In the present case, however, MSP Order 48 requires towing companies to satisfy several

conditions in order to be placed on the List and provides explicit procedures governing how the

Post Commanders may remove them from the List, including third-party investigation and the

right to appeal, which protect the towing company's interest. The district court determined that

those requirements, and the reasonable expectations derived from them, created a property interest.

The defendants argue that MSP Order 48 (and its exacting requirements for removing a

towing company from the list) does not create a property interest because the Post Commanders

have "discretion," in that they are not required to use lists; they can, alternatively, contract with

towing companies directly. This discretion, the defendants argue, means that Post Commanders

can, at any time and for any reason (or no reason), revoke the towing company's "benefit" of being

on the list and, therefore, remaining on the list is not a protected property interest. If the defendants

here had canceled their Lists altogether (and replaced them with individual contracts), this would

be a compelling (likely winning) argument. But they did not. They removed one towing company

from their Lists, leaving their Lists and MSP Order 48 otherwise intact. Further, MSP Order 48

has specific requirements for removing a towing company from a list, thus providing the towing

company protection against arbitrary removal and creating at least a limited property interest in remaining on the list.

The defendants argue, alternatively, that this type of property interest was not clearly established because the district court misread and misapplied *Lucas*, which—the defendants insist —actually says that there is NO property interest here (again, based on their "discretion" theory). As we have already explained, we do not agree with that reading of *Lucas.* The takeaway from *Lucas*, beyond the simple holding that the *Lucas* plaintiff could not establish a property interest, is that a plaintiff who can point to an "ordinance, contract[,] or other 'rules of mutually explicit understandings,'" including requirements the towing company must satisfy to be placed on and remain on the list, along with express "procedures" the Post Commanders must follow in order to remove or suspend the towing company from the list has established a "legitimate claim of entitlement." *Lucas*, 203 F.3d at 978. Because MSP Order 48 contains express reference to these requirements and procedures, Eagle Towing had a clearly established interest in remaining on the Lists.

Finally, the defendants raise a new argument in their reply brief: that a property interest must be based in state law and, here, MSP Order 48 is not state law, so there can be no property interest. Because this argument was first raised in the reply brief, we have no counterargument from Heykoop. This is one reason why we do not consider arguments raised for the first time in reply briefs. *Speedeon Data, LLC v. Integr'd Direct Mktg., LLC*, 718 F. App'x 333, 338 (6th Cir. 2017) ("we do not consider IDM's argument, raised before us for the first time in its reply") (citing *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013)). This argument is forfeited.

For the foregoing reasons, we AFFIRM the judgment of the district court.

7

SUTTON, Circuit Judge, dissenting. I reluctantly dissent from the majority's thoughtful approach to this difficult case. Even assuming there is a protected property interest in staying on a towing call list, that interest is not clearly established. The only relevant cases *rejected* similar claims. *See Lucas v. Monroe Cnty.*, 203 F.3d 964, 978 (6th Cir. 2000); *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409–11 (6th Cir. 2002). When cases reject a constitutional claim, they do not clearly establish it. And even when dicta in past cases may suggest how to satisfy the claim in a future case, they do not clearly establish the principle. They just pave the way for a future case— and a future holding—to clearly establish it.

Independent of all that, I am skeptical that a discretionary policy "intended for the guidance of [the Michigan State Police] members," R.50-2 at 2, amounts to the source of a protected property interest. The Constitution does not protect guidelines extinguishable at the whim of state officials. With respect, I would reverse the district court's denial of qualified immunity.