NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0071n.06

Case No. 20-6170

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 09, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PB&J TOWING SERVICE I & II, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| SAMUEL HINES, et al., | ) | TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: DONALD, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Even in today's digital age, word-of-mouth advertising remains the gold standard for many businesses. And that's especially true in the wrecker service industry, where customers in distress often outsource the decision of which wrecker company to use to the police. So perhaps with that in mind, PB&J Towing alleges that its procedural-due-process rights were violated when it couldn't win back a place on a rotational list that the Memphis Police Department uses to recommend wrecker companies. But there's a catch: Procedural due process protects only legitimate property interests. And PB&J doesn't have a legitimate property interest in a place on the Department's list. So we affirm the district court's grant of summary judgment.

We divide this opinion in three parts. First, we describe the legal framework that governs wrecker company services in Memphis. Second, we outline PB&J's efforts to get on the Department's towing list. And third, we explain why PB&J lacks a legitimate property interest in

a place on that list. Because we are reviewing a grant of summary judgment for the defendants, we take the facts in the light most favorable to PB&J.

I.

Memphis ordinances provide two licenses for wrecker companies. The first is known as a "general license." As the name suggests, a general license is a prerequisite to operating a wrecker company in Memphis. Armed with one, a wrecker company may tow and remove vehicles within city limits. *See* Memphis, Tenn., Code § 6-88-2 (2007). Without one, it cannot. *Id.* § 6-88-3. The second license is an emergency permit. An emergency permit authorizes wrecker companies to remove vehicles from public spaces "when there is an emergency situation." *Id.* § 6-88-2. Wrecker companies may obtain an emergency permit only after fulfilling several requirements (including obtaining a general license). The City's Permits Office issues both general licenses and emergency permits.

But there's a third benefit important to Memphis's wrecker industry: a spot on the Memphis Police Department's towing list. The Department calls wrecker companies on the towing list on a rotational basis when emergency wrecker services are needed in particular "zones" of the city and the vehicle's driver does not have a preferred wrecker service. *Id.* §§ 6-88-26(D), -29.

The Commander of the Department's Traffic and Special Operations Division, Samuel Hines, has the authority to approve or deny a wrecker company for the towing list. A wrecker company must have both a general license and an emergency permit to be eligible for the towing list. Wrecker companies must renew these benefits by re-applying every year.

II.

For more than two decades, PB&J was a fixture in Memphis. The company was one of the largest towing companies in the area. In addition to possessing a general license and an emergency permit, PB&J also held a spot on the towing list.

PB&J's relationship with the City began to sour, however, when the City decided to inspect wrecker companies to ensure compliance with the relevant ordinances. PB&J refused to let City officials inspect its facilities. And after holding a hearing, the Permits Office issued a cease-and-desist letter which revoked PB&J's general license and emergency permit and ordered it to suspend all towing services until the Department could confirm that the company was complying with all relevant ordinances.

Having lost its general license and emergency permit, PB&J was also taken off the towing list and did not receive another Department referral. PB&J first appealed the Permits Office's decision to the Memphis Transportation Commission. When that proved unsuccessful, PB&J agreed to the inspections.

PB&J passed these inspections, and the Permits Office reinstated PB&J's general license and emergency permit. But the Permits Office also mistakenly issued PB&J the decals denoting membership on the towing list. This error was short-lived. Just a few hours later, the Permits Office called PB&J and asked that it return the decals. PB&J complied and did not receive any calls through the towing list.

Roughly a month later, Hines sent PB&J a letter denying its application for reentry onto the towing list. Hines's letter explained that the Department had received "sustained citizen complaints" alleging PB&J had violated City ordinances. R. 89, Pg. ID 759. In the same letter, Hines also gave PB&J the option to appeal his decision.

PB&J took him up on the offer. At the initial appeal hearing, Hines disclosed the myriad complaints that PB&J had received over the last few months, including allegations that PB&J had routinely overcharged customers, failed to release vehicles in a timely manner, and damaged property. He even noted that PB&J had received "double" the number of "complaints of anyone else." R. 95-4, Pg. ID 1093. Because PB&J was hearing about some of these complaints for the first time, the company requested and received an extension so that it could have time to answer the complaints. But PB&J failed to provide specific responses at the second hearing too. The individual defendants who oversaw these hearings voted unanimously to uphold Hines's decision denying PB&J's application for a place on the towing list.

Almost a year later, PB&J filed this action. The district court granted the individual defendants' motion to dismiss for failure to state a claim. And the district court also granted summary judgment for Hines and the City of Memphis. This appeal followed.

III.

PB&J brings two claims: (1) procedural due process and (2) civil conspiracy. We address them in turn.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To establish a procedural-due-process violation, as relevant here, PB&J must first show that a place on the towing list is a "property interest requiring protection under the Due Process Clause." *Fields v. Henry County*, 701 F.3d 180, 185 (6th Cir. 2012). And the Supreme Court has told us that a plaintiff cannot have a "property interest in a benefit" solely by demonstrating "an abstract need or desire for it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Nor does a plaintiff's "unilateral expectation" that it will "continu[e] to receive a benefit" suffice. *Lucas v. Monroe County*, 203 F.3d 964, 978 (6th

Cir. 2000). Instead, the plaintiff must demonstrate "a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

It is well established that property interests do not arise from the Constitution itself but "stem from an independent source such as state law." *Id.*; *see Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) ("The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause." (cleaned up)). For that reason, a central guide for our inquiry has been the government's discretion in awarding the benefit. In *Triomphe Investors v. City of Northwood*, for instance, we found that the plaintiff had no property interest in a special-use permit because the city council had the discretion to deny or grant such a permit. 49 F.3d 198, 202–03 (6th Cir. 1995). And in *Silver v. Franklin Township Board of Zoning Appeals*, we rejected a plaintiff's substantive-due-process claim after holding that he lacked "a legitimate claim of entitlement" to a permit when the zoning board had the discretion to reject applicants even if they complied with "certain minimum, mandatory requirements." 966 F.2d 1031, 1036 (6th Cir. 1992).

Two cases illustrate how discretion forecloses a property interest in cases like this one. In *Med Corp. v. City of Lima*, an ambulance operator alleged a property interest in receiving 911 dispatches from the local government. 296 F.3d 404, 409 (6th Cir. 2002). The city had a policy of referring "every other 911 call" to Med Corp. before the city abruptly decided to switch course. *Id.* at 411. Nonetheless, we found that Med Corp. lacked a property interest in these referrals because the operator could not "point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit." *Id.* at 410. In reaching this conclusion, we rejected Med Corp.'s argument that the city's regulations surrounding ambulance licenses established a property interest in receiving 911 referrals because there was "no

explicit guarantee in the Code that an ambulance licensee will receive 911 dispatches from the City." *Id.* at 411.

Likewise, in *Lucas*, we found that two wrecker companies did not have a property interest in a place on a municipal rotational list when no established procedures for removal existed. 203 F.3d at 978. There, we noted that the firms could "point to no ordinance, contract or other rules of mutually explicit understandings that support their claim of entitlement to remain on the stand-by list." *Id.* (citation omitted).

Taken together, these cases tell us that PB&J can establish a property interest only if the company can identify a source of law that constrains Hines's discretion over membership on the Department's towing list. But PB&J cannot make that showing. Both the regulatory framework and context confirm that there is no enforceable policy or procedure that dictates how Hines must consider applications for membership on the towing list.[1]

Start with the City code. The code vests the Department with the authority to manage the towing list. *See, e.g.*, Memphis, Tenn., Code §§ 6-88-26(D), -29(B). As both parties agree, Hines has the exclusive authority to decide which companies are placed onto the list. By contrast, the City ordinances task the Permits Office with the responsibility of overseeing general licenses and emergency permits.

---

[1] At various points, PB&J maintains that the company was already on the towing list when Hines rejected its application. It observes that the cease-and-desist letter did not mention removal from the list when it stripped the company's general license and emergency permit. But undisputed evidence shows that PB&J was removed from the list well before Hines denied its application. The defendants point to an order from the Memphis Transportation Commission upholding the cease-and-desist letter that came months before Hines denied its application. There, the Commission plainly states that the Department "removed PB&J from the [towing list]" following the cease-and-desist letter. R. 89, Pg. ID 745. Moreover, PB&J did not receive a single referral from the list after the cease-and-desist letter arrived. PB&J does not point to any contradictory evidence in the record. Thus, "no reasonable jury" could find that the company was still on the towing list after the cease-and-desist letter arrived. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

This deliberate division of authorities between the Department and the Permits Office means something. Here, if the City had expected Hines to rubberstamp every application that was approved by the Permits Office, the City could have given the Permits Office exclusive control over the list. Instead, the Department screens the list's applications, while the Permits Office decides which companies receive the licenses. This understanding accords with a basic principle of statutory interpretation: We should interpret a law to give effect to "all [of] its provisions" such that "no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted). Under PB&J's view, however, Hines and the Department play no meaningful role in maintaining the towing list despite the code's clear language to the contrary.

PB&J points to nothing in the ordinances that would limit the Department's discretion in deciding whom to admit to the towing list. There is no language, for example, suggesting that ownership of a general license and an emergency permit is a sufficient condition for membership on the list. Nor does the framework propose any specific criteria that the Department must use to determine whether a wrecker company warrants inclusion on the list. If anything, the ordinances expressly leave this choice to the Department. One provides that Hines "may decide . . . the number of wrecker operators that will be placed on the police services wrecker rotation call list in any zone in order to promote public safety and efficiency of service." Memphis, Tenn., Code § 6-88-29(B). This open-ended delegation of authority to the Department undercuts PB&J's claim that it is entitled to a place on the towing list by virtue of owning a general license and an emergency permit. The ordinance expressly contemplates that the Department could reject any applicant for the list—even one that is entirely qualified—for the sole reason that the list has enough wrecker companies to satisfy towing needs in any particular part of the city. In that case,

an applicant cannot contend that it has "a legitimate claim of entitlement" to a place on the towing list. *Roth*, 408 U.S. at 577.

The application process for membership on the towing list confirms this understanding. When filling out forms to apply for an emergency permit, a wrecker company must also register its interest in a place on the list by checking a separate box on the application. Indeed, right below this box, the form states in unmistakably large font: "NOTE: THIS REQUEST DOES **NOT** GUARANTEE A PLACEMENT ON THE MPD ROTATION LIST." R. 88-2, Pg. ID 706. It is hard to think of a more explicit sign that a successful application for an emergency permit does not entail a spot on the towing list.

Against all this, PB&J gives three reasons for finding it had a property interest in a place on the towing list. None is persuasive.

Begin with its claim that the Department has in practice delegated management of the towing list to the Permits Office by accepting every applicant that had already been approved for a general license and an emergency permit. PB&J points to testimony from one official in the Permits Office who noted that she could not recall another instance when a wrecker company successfully obtained a general license and an emergency permit but failed to earn a place on the towing list. But that is of no moment. Both parties accept that Hines had the *formal* authority to reject applications for the list even if an applicant had already obtained a general license and emergency permit. And like the wrecker companies in *Lucas*, PB&J points to no caselaw or any other legal sources to explain why (or when) the Department somehow lost its independent power to curate the towing list. *See* 203 F.3d at 978. In other words, even assuming that the Department had historically delegated this decision-making to the Permits Office, nothing stopped Hines from reasserting the Department's prerogative to curate the list. And as long as the ultimate power of

shaping the list rested with the Department, the Permits Office's approval of PB&J's other applications could not give rise to a secure and constitutionally protected property interest in a place on the towing list.

Second, PB&J argues that its specific history of membership on the towing list formed an implied contract with the Department that restricted its discretion to control the list's membership. And it is true that we have previously "recognized that property interests may be created in some situations despite the absence of explicit contractual or legal provisions establishing a claim of entitlement." *Med Corp.*, 296 F.3d at 411. So PB&J could establish a property interest by showing that Hines's or the Department's conduct had "created an implicit, but nonetheless legally binding, obligation" to add the company to the towing list. *Id.* Again, we must look to Tennessee law. *See Fowler v. Benson*, 924 F.3d 247, 258 (6th Cir. 2019). It proves, among other things, that an implied contract "must be sufficiently definite to be enforced" and cannot "be accomplished by an ambiguous course of dealing between the two parties from which differing inferences . . . might reasonably be drawn." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990).

But PB&J cannot show it had an implied contract with the Department. The most that PB&J can show is that it used to have a spot on the list. But that does not suffice to create an implied contract. We have reminded litigants time after time that "mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest." *Lucas*, 203 F.3d at 978. For the reasons given above, PB&J's past presence on the list fails to establish a sufficiently concrete contract that a court could enforce. Like the other wrecker companies, PB&J had to re-apply every year for a spot on the towing list. And no legal authority constrained Hines's decision over which companies deserved a place on the towing list. Under these circumstances, a

reasonable inference could be made that prior placement on the towing list does not guarantee future membership.

The sweep of PB&J's argument confirms its untenable position. Dozens of wrecker companies are on the towing list. Under PB&J's lights, the City has made an implicit contract with all of them that supersedes the annual re-application process each company must fill out for the continued privilege of being on the towing list. That cannot be so. And it's an especially strained argument for PB&J to make as it had already been removed from the list months before Hines's decision to deny its re-application.

PB&J's ejection from the towing list months before Hines's decision to reject its new application also explains why PB&J's invocation of *Gregg v. Lawson* is unpersuasive. *See* 732 F. Supp. 849 (E.D. Tenn. 1989). In *Gregg*, the district court found that a wrecker company had a federally protected property interest in a place on a municipal rotational call list like the one in this case. The district court reached this result after noting that the city's ordinances had listed "several . . . procedures for removal or suspension from the list." *Id.* at 853. Together, these regulations reflected the "mutual nature of the relationship" between the towing companies and the government. *Id.* But importantly, the wrecker company in *Gregg* was aiming to stay on the rotational list. Here, by contrast, PB&J is not on the towing list. And there is a world of difference between a property interest in retaining an existing benefit and a property interest in acquiring a new benefit.

Perhaps sensing this, PB&J switches gears by arguing in the alternative that the company was re-added to the towing list (and therefore acquired a constitutionally protected property interest) when the Permits Office mistakenly granted it decals denoting a place on the list. That cannot be right. To start, the Permits Office's mistake here was short-lived and corrected within

hours. And PB&J does not contend that it acquired any meaningful reliance interest in membership on the list during that time. Under such circumstances, PB&J's place on the list can hardly be considered a "legitimate claim of entitlement." *Perry v. Sindermann*, 408 U.S. 593, 602 (1972).

Holding otherwise could upend the ordinary workings of local government by threatening to elevate every benign bureaucratic mishap into a constitutionally protected property interest. We decline PB&J's invitation for federal judges to supervise every minor error that comes from City Hall. As the Supreme Court has reminded us, "numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error." *Bishop v. Wood*, 426 U.S. 341, 350 (1976).

And since PB&J has failed to allege facts or provide evidence sufficient to establish its procedural-due-process claim, its civil-conspiracy claim against the individual defendants must also fail. As we have held before, a claim for civil conspiracy under 42 U.S.C. § 1983 exists only if the plaintiff has established a separate and actionable constitutional injury. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011) (per curiam). So we affirm the district court on both grounds.